## In the Matter of the Construction of the Will of EUGENE F. SUTER, Deceased.

Surrogate's Court, New York County, May 19, 1955.

*Scandrett & Chalaire* for Walter Chalaire and another, as trustees under the will of Eugene F. Suter, deceased, petitioners.

*Sigmund Goldstein* for Eugene F. Suter, Jr., respondent.

*Joseph C. Hogan* for William P. S. Earle, Jr., as committee of the person and property of Audrey W. Suter, an incompetent, respondent.

*Eugene J. Keefe,* special guardian for Frank E. Suter and others, infants, respondents.

COLLINS, S. The anomalous question posed by the petition of the trustees for a construction of the will of Eugene F. Suter, deceased, is the validity of a renunciation by the testator's son, Eugene F. Suter, Jr., of benefits under a testamentary trust valued at approximately $400,000.

The facts are not in dispute. The will gives $350,000 and the residue of the estate to trustees to be held in a trust measured by the life of the son, Eugene F. Suter, Jr., to pay annually from

the income $600 to testator's sister, $5,000 to his former wife, and the balance of income to the son. The will further provides for the payment to the son, after the death of testator's former wife, of one fourth of the remaining principal when he reaches the age of thirty, one third at thirty-five years, and the balance at forty. In the event the son dies before reaching forty, the remaining principal is to be used to pay $5,000 to testator's brother, to purchase annuities for testator's sister and former wife, and the balance to such issue of his son who may then be living. In default of such issue, the balance is payable as the son may have directed in his will, and in default thereof to testator's brothers and sisters and their issue.

Eugene, Jr., was fifteen years of age when the trust was set up in October, 1947. He became twenty-one on June 12, 1953. During his minority the trustees paid to him, or for his benefit out of income, the aggregate sum of $34,806.83. On June 16, 1953, after attaining his majority, the donee of the gift received from the trustees accumulated income of $30,884.05 and six months later he received additional income of $5,152.41, making a total of $69,843.29. The trustees assert that immediately after receiving the $30,884.05 the donee, against advice and counsel, gave away most, if not all of it, to various charitable and political organizations, including the Socialist Party of America, a negro educational project, and the American Friends Service Committee.

Thereafter, the donee communicated with the trustees, first orally, then by letter, renouncing all claims to his father's estate " for moral and political reasons." When the trustees demurred, the donee engaged counsel to effectuate the renunciation legally.

When the donee was six years old his parents were divorced, and three years thereafter he was the subject of a habeas corpus proceeding for his custody. Two years later, when he was eleven, his father died. The trustees allege that the donee, who is unmarried, has been treated for undulant fever. He attended good preparatory schools, the University of Vermont, and now is a senior at Yale University. Apparently he has no other income.

The trustees strongly oppose acceptance of the renunciation, challenge its validity, and maintain that acceptance would destroy the trust and amount to alienation of income in violation of section 15 of the Personal Property Law. They assert that " It is this unfortunate, misguided, improvident, young man, whom his father sought in his will to protect, and whom the

trustees today seek to protect from his own folly ''; a commendable position and true to their trusteeship. But how could the donee be prevented from giving away every additional cent he became entitled to under the trust?

We are not concerned here with the wisdom or ethics of the donee's renunciation, nor may we probe motivation. Our fundamental, if not sole, concern is with the legality of the renunciation, and not with its effect on the renouncer. The donee's insistence that as a member of a free society, with a freedom of choice, he cannot be yoked to this inheritance against his will, is supported by law. No distinction is made in this respect between an outright legacy and benefits flowing from a trust fund. '' It seems clear that the law does not compel a man to accept an estate, either beneficial or in trust, against his will ''. (*Burritt* v. *Silliman*, 13 N. Y. 93, 96; *Albany Hosp.* v. *Albany Guardian Soc.*, 214 N. Y. 435.)

Thus, institutions have been known to spurn gifts via trusts which the institutions deemed subversive or hostile to their purposes or ideals. A like right extends to individuals. True, by the acceptance of the benefits of this trust the donee does not obligate himself to do or refrain from doing anything — acceptance is unconditional. Even so, acceptance obviously offends his '' moral and political '' principles. Centuries ago, the Roman poet, Lucretius, enunciated the truism that, '' What is food to one may be fierce poison to others.'' To this donee the gift is not food, but a cup of hemlock which the law cannot force him to swallow. Wealth assumes various forms, hinging on one's sense of values. Perhaps the donee is inspired by the philosophy of Seneca that '' Lack of desire is the greatest riches.''

It is not impossible that more mature reflection, illness, want, physical infirmities, unemployment or other untoward or unforeseen circumstances might impel the donee to regret his renunciation. Marriage, children, an impulse to befriend needy and worthy causes and persons, change or reappraisal of political or economic concepts, or other unforeseeable eventualities, may effect a change of heart. Not even the donee is clairvoyant enough to penetrate his future. The good that this wealth could accomplish is too manifest for emphasis. It has, indeed, yielded the wherewithal for his education and maintenance. Consequently, the suggestion that the donee allow the income to accumulate in the hands of the trustees, to provide for eventualities, seems prudent and farsighted. Considering the possibilities and imponderables, it is not easy to perceive how this sensible and wary course could violate anyone's scruples, no matter how

sensitive or conscientious. It must be assumed, however, that the donee has weighed his decision and is prepared to take the consequences. His act of renunciation does not evidence impetuosity or lack of deliberation. His adamant determination, therefore, must prevail even though to the trustees, and, doubtless, to others, it be " folly ".

Reluctantly, the court holds the renunciation valid and effective. The donee had not previously accepted the income presently accrued or to accrue or any corpus. Such holding does not destroy the trust or violate the statute prohibiting transfer of the income. The trust is to continue and the corpus is to be held by the trustees until the expiration of the trust period or periods stated in the will. Upon such expiration period or periods, and particularly upon the donee's reaching thirty years of age, or upon his death, if it should occur prior thereto, application may be made to the court for determination as to the person or persons entitled to partial or entire distribution of corpus.

In the meantime the undisposed of trust income should be paid to those presumptively entitled to the next eventual estate. (*Matter of Hanna,* 155 Misc. 833, and cases cited therein; *Matter of Matthiessen,* 175 Misc. 466; Real Property Law, § 63.)

Submit decree on notice accordingly.