Eugene F. SUTER, Jr., Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 66 Civ. 3715.

United States District Court,
S. D. New York.

May 6, 1970.

Sigmund Goldstein, New York City, for plaintiff.

Whitney North Seymour, Jr., U. S. Atty., S. D. New York, for defendant; Richard M. Hall, Asst. U. S. Atty., S. D. New York, of counsel.

METZNER, District Judge:

Plaintiff Eugene F. Suter, Jr. is suing to recover taxes paid in 1959 and 1960, claiming that he was improperly denied deductions for certain of his legal fees. These fees were expended in a successful attempt by the taxpayer to set aside his own prior renunciation of all interest in a trust created for him and to be reinstated as a beneficiary of the trust. The central issue before the court is whether such expenditures are deductible under § 212 of the Internal Revenue Code of 1954 as:

"ordinary and necessary expenses paid or incurred during the taxable year—

(1) for the production or collection of income;

(2) for the management, conservation, or maintenance of property held for the production of income; or

(3) in connection with the determination, collection, or refund of any tax."

The will of taxpayer's father, Eugene F. Suter, left $350,000 and the residue of his estate in trust with $5,000 of the income payable to the testator's former wife Audrey as long as she lived, $600 of the income payable to the testator's sister, and the balance to the taxpayer. After Audrey's death the principal of the trust was to be distributed to the taxpayer in three installments payable on his thirtieth, thirty-fifth, and fortieth birthdays.

Shortly after turning twenty-one the taxpayer renounced all his claims to the income or principal of this trust, and his renunciation was upheld by the Surrogate's Court of New York County. In re Estate of Suter, 207 Misc. 1002, 142 N.Y.S.2d 353 (1955).

Thereafter the taxpayer decided that he wanted his interest in the trust reinstated. On September 10, 1956 he filed a petition in the Surrogate's Court to withdraw his renunciation of the trust and to vacate the order approving it. The petition alleged that his renunciation had been the product of mental illness and that as such it was a nullity. The court-appointed psychiatrist found the taxpayer incompetent to manage his own affairs and determined that this condition existed at the time he renounced the trust.

While this petition was under advisement, the Surrogate directed that proceedings be instituted for the appointment of a committee for the taxpayer's property before the trust began making payments to him again. On October 24, 1957, the taxpayer was adjudged incompetent to manage his own affairs and a committee of his property was appointed.

The committee of the property filed its appearance in the Surrogate's Court proceeding on December 23, 1957. On February 21, 1958, the Surrogate entered a decree that the taxpayer's prior renunciation of his interest in the trust was invalid and restored him as a beneficiary of the income and as remainderman. In re Estate of Suter, 11 Misc.2d 144, 172 N.Y.S.2d 100 (1958). His share of the trust income was paid to the committee, which disbursed it on behalf of the taxpayer until the discharge of the committee in 1959.

In timely filed returns for 1959 and 1960, the taxpayer took deductions totaling $6,827.92 for attorney's fees paid to Sigmund Goldstein, Esq. Eighty per cent of this amount went to Goldstein for representing the taxpayer in the proceedings in the Surrogate's Court. The other twenty per cent was paid for serv-

ices performed by Goldstein in the proceeding for the appointment of a committee.

In the same years the taxpayer also claimed deductions totaling $7,948.38 for attorney's fees paid to the law firm of Jillson and Jillson. It is agreed by all parties that half of this amount was paid for tax services rendered to the committee. The other half was paid in part for nontax legal services in connection with the proceedings for the appointment of the committee, and in part for services to the committee after its appointment. These services consisted primarily of filing the annual reports for the committee and paying the taxpayer's medical bills.

The Internal Revenue Service (IRS) disallowed all of these deductions. The taxpayer paid the assessed taxes under protest, filed a timely claim for a refund and then commenced this suit.

The court has jurisdiction under 28 U.S.C. § 1346(a) (1).

The government has conceded that the amounts charged the taxpayer for the legal fees in question are reasonable charges. It is also conceded that the half of the deduction for the Jillson firm which related to tax services was properly deducted under § 212(3) of the Internal Rev. Code of 1954. The government disputes the propriety of the deductions for services in the Surrogate's Court, for services in connection with the appointment of the committee and for services to the committee after its creation.

■ Deductions claimed under § 212 of the Code can be disallowed for either of two reasons. § 262 provides that "no deduction shall be allowed for personal, living, or family expenses," in contradistinction to expenses incurred in the taxpayer's capacity as a profit-seeking entity. See United States v. Gilmore, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963). Second, an amount spent in connection with a capital asset may be held to be a § 263 capital expenditure made to increase the value of the asset rather than to maintain it in its current state. See Treas. Reg. § 1.263(a)–1(b).

Capital expenditures may be added to the basis of the asset under § 1016(a) (1) in a proper case, but may not be deducted. See Treas. Reg. § 1.212–1(n). Legal expenses to acquire, perfect, defend or dispose of title to a capital asset are considered to be capital expenditures by the IRS and the courts. See Treas. Reg. § 1.212–1(k); id. § 1.263(a)–2(a), (c); Woodward v. Commissioner of Internal Revenue, 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970).

■ Under these rules the legal fees paid to Goldstein for services rendered in the Surrogate's Court proceeding are nondeductible capital expenditures. That the taxpayer's interest as income beneficiary and remainderman of a trust was a capital asset follows from McAllister v. Commissioner of Internal Revenue, 157 F.2d 235 (2d Cir. 1946), cert. denied, 330 U.S. 826, 67 S.Ct. 864, 91 L.Ed. 1276 (1947), which held that a life estate was such an asset. That his legal fees were expended to perfect or defend title in the asset follows from Lewis v. Commissioner of Internal Revenue, 253 F.2d 821, 827–828 (2d Cir. 1958).

■ The fees paid in connection with the establishment of a committee for taxpayer's property, and for legal services to the committee after its creation, stand on another basis. Treas. Reg. § 1.212–1 (j) provides that:

"Reasonable amounts paid or incurred for the services of a * * * committee for a ward * * *, and other expenses of * * * committees which are ordinary and necessary, in connection with the * * * collection of income inuring to the ward * * *, or in connection with the management, conservation, or maintenance of property, held for the production of income, belonging to the ward * * *, are deductible."

The legal expenditures in question here qualify either as reasonable amounts paid for the services of a committee, or as ordinary and necessary expenses in the collection and management of income of the ward. Thus they are deductible un-

der the express terms of the IRS's own regulation.

The taxpayer is entitled to deduct all of the claimed legal fees to Jillson and Jillson and twenty per cent of the claimed fees to Mr. Goldstein. Settle judgment.