Richard J. Bookhoitt, S.
Testatrix died on November 13,1972, leaving her will dated September 18, 1970 which was duly admitted to probate on December 14,1972.
The will disposed of her estate of several million dollars by specifically bequeathing certain tangible personal property and devising her residence to a cousin, granting several cash legacies aggregating $52,000 to various individuals and organizations and establishing a trust of the entire residue for the benefit of two cousins for their joint lives with the remainder to be paid over in specified proportions to eight churches and charitable organizations.
The life beneficiaries validly renounced all their interest in 30% of the residuary estate, and in addition they renounced their interest in a power of invasion granted by the will in their favor, and also their interest in all annual income in excess of 5% of the value of the trust computed annually.
The effect of the renunciations was to transform the single residuary trust provided for by the will into a two part residuary estate consisting of a 70% share representing a “ chari *579 table remainder unitrust ” and a 30% share exclusively for the charities.
Such post-mortem estate planning is proper when authorized by law, and can effect a substantial estate tax saving; however, renunciations can, and in this case do, raise questions requiring construction of the will as affected by the renunciations.
The first question is: “ do the renunciations by the income beneficiaries of their interest in 30% of the residuary estate result in the immediate vesting in possession of the charities interest in such 30% ? ”
The answer must be affirmative.
Subdivision (c) of EPTL 3-3.10 deals with the effect of a renunciation, and provides that a renunciation ‘ ‘ has the same effect with respect to the renounced interest as though the renouncing person had predeceased the testator # * Such renunciation is retroactive to the date of death of the testator ’ ’.
This statutory direction which would accelerate the indefeasibly vested remainders in favor of the charities is clear; and in this case is not in conflict with any provision of the operative will, nor with any other statute nor public policy of this State.
I would respectfully disagree with my learned colleague Surrogate Green insofar as he refers to a policy favoring the indestructibility of trusts; although not necessarily with his decision in Matter of Dexter (75 Misc 2d 239) wherein under the express terms of the will the remainders were subject to defeasance in the event of the death of the remaindermen during the lifetime of the renouncing life beneficiary.
I find no difficulty in reconciling EPTL 3-3.10 and EPTL 7-1.5. While the income beneficiary of a trust may not ordinarily transfer his interest, he may renounce such interest and the will or trust instrument will effect the transfer.
In the instant case the renounced interest vests immediately in the charitable remaindermen, and the will indicates no intention or purpose to require postponement of the possession and enjoyment of the principal. There is neither reason nor policy to continue the trust for the renounced 30% interest. The overriding policy of the State and the law favors the early vesting of estates and the free alienability of property.
The second question is: “ should the statutory rule of apportionment under EPTL 2-1.8 apply to the decedent’s residuary disposition as modified by the renunciations? ”
The answer here is also affirmative.
*580 The will contains this direction as to payment of estate taxes :
‘ ‘ Eleventh : All estate, inheritance, legacy, succession or transfer taxes (including any interest and penalties thereon) imposed by any domestic or foreign laws now or hereafter in force with respect to all property taxable under such laws by reason of my death, whether or not such property passes under this my Will, and whether such taxes be payable by my estate or by any recipient of any such property, shall be paid by my Executor out of my general estate as part of the expenses of the administration thereof with no right of reimbursement from any recipient of any such property.”
While this provision clearly exempts the preresiduary dispositions, as well as any nontestamentary assets from payment of any portion of estate taxes, Matter of Nicholas (33 N Y 2d 174), it does not expressly cover the question which has arisen because of the partial renunciation, namely apportionment of estate taxes between the intra-residuary dispositions. Testatrix intended that the principal of the residuary trust should bear the entire burden of estate taxes, and in accordance with her expressed wishes the estate taxes should be paid before the residuary estate is constituted.
The question left open, and created by the partial renunciation, relates to the apportionment of the burden of taxes as between the residuary shares.
Our law favors apportionment of estate taxes among the recipients of estate assets and any contrary direction in the will must be clear and unambiguous. (EPTL 2-1.8; Matter of Pepper, 307 N. Y. 242; Matter of Coulter, 11 Misc 2d 851, affd. 4 A D 2d 1019, mot. for lv. to app. den. 5 A D 2d 814; Matter of Miller, 76 Misc 2d 1092.)
An excellent discussion of the legislative history of our apportionment statute, and an analysis of the decided eases wrestling with this problem as it affects intra-residuary apportionment is contained in the opinion of Surrogate Sobel in Matter of Olson (77 Misc 2d 515). While other cases are of value in recognizing principles to be applied, still the question boils down to construction of the particular tax exoneration clause in question, read as a part of the entire will, and the intended over-all testamentary plan.
“It is presumed that testators desire to take full advantage of all available tax deductions in marital and charitable residuary dispositions ”. (Matter of Olson, supra, p. 520.)
I find that while this testatrix directed that the estate taxes should be paid out of her general estate as a part of the expense *581 of administration thereof, she failed to include the words ‘ ‘ without apportionment ’ ’ and therefore the will contains no clear and unambiguous direction against the apportionment within the residue. This is apparent since the question as to intra-residuary apportionment arose only as the result of the post-mortem partial renunciation, which eventuality was not mentioned any place in the will, and apparently was not contemplated by testatrix when adopting the tax exoneration clause she used. (.See Matter of Shubert, 10 N Y 2d 461, 476.)
Under the circumstances here present the statute must prevail, and any deduction allowed by reason of the charitable purposes of the gift shall inure to the benefit of the charitable residuary beneficiaries. (EPTL 2-1.8, subd. [c], par. [2].)
Such a construction follows our State policy that the charities shall receive the full benefit of the charitable deductions allowed under the tax laws, and it does no violence to the intentions of the testatrix that the full burden of estate taxes imposed on account of the residuary estate should fall upon the principal of the trust for the cousins’ benefit. 1 That the burden of such taxes attributable to the residuary estate, now falls entirely upon the 70% of their retained interest is but a part of the consequence of their voluntary renunciation.