OPINION OF THE COURT
Millard L. Midonick, S.
This application seeks to construe article "third (b)” of decedent’s will as to the effect of a renunciation of interest by the life tenant of a testamentary trust on the remainder interests.
*649 Testatrix died on December 15, 1976 survived by her son, daughter and the issue of the daughter.
Pursuant to article "third (b)” testatrix created a trust of one half her residuary estate: "(b) To receive and collect the rents, profits and income from one such trust fund and to pay over the net income therefrom to my daughter, emily brown chadbourne, so long as she shall live; upon her death to transfer and deliver, and I hereby give, devise and bequeath, the entire principal of said fund to such beneficiaries as my daughter may by her will direct, or should my daughter fail to dispose of the said principal by her will, then to her issue her surviving, in equal shares, per stirpes, or if she leave no issue, then to her brother, or if he shall have died, then to his issue him and her surviving, in equal shares, per stirpes
The daughter has timely served and filed her renunciation of all rights in the trust so created.
EPTL 3-3.10 (subd [c]) (L 1971, ch 1154, § 1) effective November 3, 1971 as to all persons dying on or after said date, as amended provides: "(c) Unless the testator or donee of a power has otherwise provided, the filing of a renunciation, as provided in this section, has the same effect with respect to the renounced interest as though the renouncing person had predeceased the testator or the donee as the case may be, or if the renounced interest is a future estate, as though the renouncing person had died at the time of filing or just prior to its becoming an estate in possession, whichever is earlier in time. Such renunciation is retroactive to the date of death of the testator or donee as the case may be. A person who has a present and a future interest in property and renounces his present interest in whole or in part shall be deemed to have renounced his future interest to the same extent.”
There being no provision contained in the will relative to the effect of a renunciation and the decedent having died after the effective date of the statute, the statute is applicable. (Matter of Klosk, NYLJ, Feb. 14, 1973, p 21, col 1.)
The question of construction is whether an acceleration in favor of the contingent remaindermen has occurred by virtue of the renunciation or whether a continuation of the trust for the benefit of the remaindermen until a future date, to wit, the death of the life tenant, is necessitated. In Matter of Schloessinger (70 Misc 2d 206), I held that the effect of the renunciation by the life tenant daughter of the decedent in favor of her three named children remaindermen was to *650 terminate the life estate as of the date of death of the decedent and to pass the interest outright to the remainder-man as the next eventual estate. In so deciding, reliance was heavily placed on Matter of Fordham (235 NY 384, 387) wherein Judge Cardozo said: "An ulterior limitation 'upon’ the death of another who is given an estate for life, will not, in general, be defeated by the lapse of the particular estate through the death of the life tenant before the will can take effect. This is so though the language of the gift, if literally construed, may make the remainder contingent upon succession in the order named (U. S. Trust Co. v. Hogencamp, 191 N. Y. 281; Williams v. Jones, 166 N. Y. 522, 536; Norris v. Beyea, 13 N. Y. 273, 287; 2 Jarman on Wills [6th English ed.], p. 1373). The gift before us is to be read in submission to that rule. When the testatrix said that 'upon’ the death of Allan, the residuary estate was to go to the members of a class, she certainly did not mean that it was to go to them 'upon’ his death, if his death occurred before her own. She understood that her will would take effect when she died, and not before. 'Upon the death of Allan’ means, therefore, upon the termination of the life estate bequeathed to Allan. If he died during her lifetime, the remainders would be accelerated; they would not be destroyed.”
This result has not been universally attained. Relying on the inalienability of trust interests as expressed by EPTL 7-1.5 and the ancient doctrine of the indestructibility of spendthrift trusts, it was held in Matter of Dexter (75 Misc 2d 239, 241-242) that: "while the right of a beneficiary of a trust to renounce is established beyond question, he may not thereby effect a termination of a spendthrift trust and accelerate the remainder by virtue of EPTL 3-3.10 (subd. [c]). The effect of such renunciation, well established, is that the income is payable to the persons presumptively entitled to the next eventual estate.”
One year after Dexter, it was reasoned that:
"I find no difficulty in reconciling EPTL 3-3.10 and EPTL 7-1.5. While the income beneficiary of a trust may not ordinarily transfer his interest, he may renounce such interest and the will or trust instrument will effect the transfer.
"In the instant case the renounced interest vests immediately * * * The overriding policy of the State and the law favors the early vesting of estates and the free alienability of property.” (Matter of Slade, 79 Misc 2d 578, 579.)
*651 By way of dicta in Matter of Mixter (83 Misc 2d 290, 292) I said: "Under [EPTL 3-3.10] the petitioner would be deemed to have predeceased the testator with the result that the remainder interest would pass to his issue under the terms of the will. (Cf. Matter of Fordham, 235 NY 384.) Under that section the renunciation is viewed as the equivalent of the natural death of the person renouncing.”
A recent case failed to follow Matter of Schloessinger (supra) and placing its reliance on Professor Rohan’s Commentary (9 Rohan, NY Civ Prac, par 3-3.10 [2], n 6) said: "a remainder cannot be accelerated where the class of remaindermen is to be determined at a future remote date.” (Matter of Sheldon, NYLJ, Jan. 3, 1977, p 12, col 4.)
These divergences in opinion have been unified by the Legislature. Chapter 861 of the Laws of 1977, repealing EPTL 3-3.10 (eff Aug. 11, 1978); repealing EPTL 4-1.3 (eff Aug. 11, 1977); and enacting EPTL 2-1.11 (eff Aug. 11, 1977), has codified the Schloessinger rationale into law. Unless otherwise provided in the instrument, a renunciation will have the same effect as if the renouncing person predeceased the decedent and the renunciation of an income interest will accelerate the remainder. (Two very recent cases discussing this issue are Matter of Osher, 91 Misc 2d 587, and Matter of Howson, NYLJ, Oct. 6, 1977, p 12, col 2.)
This court finds no reason to now stray from its prior rationale and what is clearly legislative intent. In addition, this court recognizes the beneficial nature of a renunciation as an effective postmortem estate planning tool and income tax planning device. The Tax Reform Act of 1976 represents congressional acknowledgment of postmortem tax planning. Pursuant to EPTL 3-3.10 (subd [c]) the renouncing life tenant is deemed to have predeceased the decedent. The next eventual estate accelerates and is payable outright to the life tenant’s issue, to wit, the four grandchildren of the decedent.