OPINION OF THE COURT
Renee R. Roth, S.
The executor of the estate of Peter Gilbert asks the court to declare null and void a renunciation by Mr. Gilbert’s son, Lester, of his interest in two wholly discretionary trusts under decedent’s will.
Mr. Gilbert died on March 26, 1989, leaving an estate of over $40,000,000. He was survived by his wife and four children. Under his will, testator, after making certain preresiduary legacies, created an elective share trust for the life income benefit of his wife. The amount of decedent’s generation-skipping transfer (GST) tax exemption was divided into four discretionary trusts, one for the primary benefit of each of his children. The residue of Mr. Gilbert’s estate was similarly divided. Upon the death of the widow, the remainder of her trust is to be added in equal shares to the residuary trusts for decedent’s children. The trusts are wholly discretionary. Decedent’s son, Lester, is therefore a discretionary income beneficiary of two testamentary trusts, one of which will be augmented at the widow’s death. Decedent’s issue, including Lester’s sisters, nieces and nephews as well as Lester’s issue (should he have any), are also discretionary beneficiaries of both of Lester’s trusts.
Lester, who has no issue, timely served on the executor a notice of renunciation of his "dispositive share in the estate of Peter Gilbert”.
The executor, supported by the guardian ad litem for decedent’s minor grandchildren, takes the position that Lester’s renunciation should be declared invalid. First, he states that permitting the renunciation would violate the testator’s intention to provide for Lester. Second, the executor argues that Lester possesses no current property interest and therefore has nothing to renounce. The executor maintains that Lester’s *381 renunciation is premature and may be made only if, and at such time as, the trustees exercise their discretion to distribute income or principal to him.
The executor explains decedent’s intention as follows:
"Lester, who is approximately 32 years of age * * * has left the religion of his birth and has for some time lived in Virginia with a small group of people who share a similar religious doctrine. Some months ago he phoned your petitioner and announced that he planned to renounce whatever bequest was left for him. When asked what he planned to do if he were ever taken seriously ill and needed expensive medical care, he responded 'Jesus will provide for me’.
"The fact that Lester had chosen to alienate himself from his family did not stop the decedent from loving his son or worrying about his future needs * * * [T]he decedent wanted to know that funds would be available if the trustees, acting in the manner that they thought the decedent would have acted had he then been living, should ever decide, for example, to pay a medical bill for Lester.”
In effect, the executor argues that if the beneficiary of a wholly discretionary trust is permitted to renounce his or her interest, then no trust can ever be created to protect someone who is now disdainful of financial assistance but may in the future be in dire need, or simply have a change of heart.
However, under these circumstances, decedent’s intention is not controlling. With respect to every renunciation, the intent to make a transfer is thwarted by the beneficiary who refuses to accept it. But clearly, "the law does not compel a man to accept an estate, either beneficial or in trust, against his will” (Burritt v Silliman, 13 NY 93, 96; see also, Matter of Suter, 207 Misc 1002).
The executor suggests in his memorandum that he might be forced "to inquire into the mental capacity of Lester, since there is no rational reason which explains Lester’s conduct”. However, the desire to renounce wealth is not necessarily irrational. Presumably, the executor would not argue that a nun who takes a vow of poverty is mentally incompetent. Here, the acceptance of a monetary benefit apparently conflicts with Lester’s religious beliefs. It would not be appropriate for the court to determine the validity of those beliefs, even if requested to do so. Furthermore, even if Lester’s renunciation were purely whimsical, this would not in itself be sufficient reason either to reject the renunciation (Matter of *382 Suter, supra) or to find him incompetent. In any event, the question of Lester’s mental capacity has not been raised. There is no allegation in the petition or in any affidavit that Lester is a person under disability. The court must therefore proceed on the assumption that Lester is competent to make an effective renunciation.
The executor’s second argument is that Lester has no current property interest which he can renounce. Rather, the executor maintains that Lester must wait until the trustees exercise their discretion to distribute income or principal to him, at which time, the executor asserts, Lester can renounce the property subject to such exercise of discretion. There appears to be no decision in New York with respect to the renunciation of a discretionary interest.
Renunciations are governed by EPTL 2-1.11. Subdivision (b) (1) of such statute provides that "[a]ny beneficiary of a disposition may renounce all or part of his interest”. EPTL 1-2.4 defines "disposition” as "a transfer of property by a person during his lifetime or by will”. "Property” is defined in EPTL 1-2.15 as "anything that may be the subject of ownership”. Therefore, under the statute, a renunciation may be made only with respect to a transfer of something which may be the subject of ownership. The statute, however, does not require that property be transferred to the beneficiary. Instead, the property may be transferred to a trustee for the benefit of a beneficiary (see, e.g., Matter of Chadboume, 92 Misc 2d 648). Furthermore, the statute does not require that the beneficiary renounce the disposition itself; rather, he may renounce "all or part of his interest” in the disposition (EPTL 2-1.11 [b] [1] [emphasis added]).
In this case, decedent by his will transferred property to trusts of which Lester is a beneficiary, albeit a discretionary beneficiary. Similarly, the subject of Lester’s renunciation is his interest in the trusts, although that interest is discretionary. The renunciation, therefore, appears to satisfy the terms of the statute.
The executor, however, contends that Lester’s interest in the trusts does not rise to the level contemplated by the statute. He argues that for a renunciation to be effective, the renounced interest must be in the nature of property. Claiming that Lester’s interest is not property, the executor cites Hamilton v Drogo (241 NY 401), where the Court of Appeals held that a judgment creditor was not entitled to levy on the *383 interest of one of the beneficiaries of a discretionary trust. Holding that the judgment creditor could attach the income if and when the trustee distributed it to the beneficiary, the Court observed: "In the present case no income may ever become due to the judgment debtor. We may not interfere with the discretion which the testatrix has vested in the trustee any more than her son may do so * * * But * * * if it is exercised in favor of the duke then * * * [a]t least for some appreciable time, however brief, the award must precede the delivery of the income he is to receive and during that time the lien of the execution attaches” (at 404).
Similarly, in Matter of Duncan (80 Misc 2d 32), the court held that a beneficiary of a discretionary trust possesses no property reachable by creditors until distribution is made. The court observed that there was "no absolute right to receive income or principal from the trust and * * * therefore there [was] no property or rights to property belonging to the beneficiaries, specifically Thomas W. Doran, the subject of the levy. If, however, the trustee does at any time elect in his discretion to pay [the beneficiary] * * * the amount of said payment will be subject to the levy” (at 35-36 [emphasis added]).
But the cases relied upon by the executor are clearly distinguishable from the instant case in that they deal with the rights of creditors and not with those of beneficiaries. More closely analogous are those decisions which determine the rights of beneficiaries to compel distribution by trustees. Although in this case Lester’s creditors cannot reach the trusts, Lester may nonetheless have the right to force the trustees to distribute income or principal to him under certain circumstances.
Although our courts cannot ordinarily interfere with the exercise of a trustee’s discretion, they can ensure that such discretion is exercised fairly and honestly (Collister v Fassitt, 163 NY 281; see also, Ireland v Ireland, 84 NY 321; Manning v Sheehan, 75 Misc 374). In the present case, the trustees’ discretion is absolute and not limited by any standard. However, even in such a case, the trustees may be compelled to distribute funds to the beneficiary if they abuse their discretion in refusing to make distribution (see, e.g., Matter of Stillman, 107 Misc 2d 102).
Thus, Lester may have the right to compel the trustees to distribute trust property to him under certain circumstances. Therefore, even if the court accepts the executor’s interpreta *384 tion of the statute, Lester arguably has a current interest which could be deemed "property” for the purpose of an effective renunciation. In such respect, the present case is distinguishable from Matter of Heffner (132 Misc 2d 361), where the disclaimants wished to renounce their interests as takers in default of the exercise of a power of appointment. In that case, the disclaimants had no rights whatsoever against the donee of the power since a court could not control such donee’s exercise of the power in any respect.
Although Surrogate Radigan allowed the renunciation based on common law, he observed that there was no statutory right to renounce. Commenting (supra, 132 Misc 2d, at 362) that "[petitioners possess no present property interest which can be renounced” under the statute, he cited EPTL 2-1.11 (a) (2), which provides that the "effective date” of a disposition created by the exercise or nonexercise of a testamentary power of appointment is the date of death of the powerholder. The Surrogate concluded that no property interest is created before the effective date.
It is noted, however, that no such effective date is specified for discretionary dispositions. Furthermore, this court approaches the question somewhat differently. As discussed earlier, a statutory renunciation need not relate to property. Instead, the statute merely requires the disclaimant to renounce his or her interest in a disposition. Even if the statute requires a property interest, this court does not conclude that the "effective date” of a disposition determines when such an interest is created. Rather, the sole purpose of EPTL 2-1.11 (a) (2) is to provide a date from which the time to file a renunciation is measured.
Lester’s renunciation also applies to his remainder interest in the elective share trust, which is contingent upon his surviving the widow. As discussed above, any interest, whether or not contingent, is within the scope of the statute. Even if the executor’s interpretation is correct and a renunciation must relate to an interest in property, a contingent remainder has historically been recognized as a property interest.
Finally, the guardian ad litem argues that if Lester’s renunciation is allowed, the remainder interests in his trusts should not be accelerated. The remainder of Lester’s trusts would be payable to his issue. As mentioned earlier, Lester has no issue. If the interests are accelerated, Lester’s unborn *385 issue would be cut off and decedent’s living grandchildren would lose certain present interests in these trusts. It is noted that acceleration of the trust remainders would have no direct tax consequences and any indirect effects would be relatively minor.
The question is whether under EPTL 2-1.11 (d) this court has any discretion to suspend acceleration. Such statute, in relevant part, provides that: "Unless the creator of the disposition has otherwise provided, the filing of a renunciation, as provided in this section, has the same effect with respect to the renounced interest as though the renouncing person had predeceased the creator or the decedent * * * and shall have the effect of accelerating the possession and enjoyment of subsequent interests.” Thus, it appears that under the language of the statute, the remainder interests in Lester’s trusts will be accelerated unless the decedent has "otherwise provided”. There is no explicit "otherwise provision” in testator’s will, but the guardian ad litem argues that the court should infer an "otherwise provision” from the general language of the will and the circumstances surrounding its execution.
Two opinions, Matter of Jacobs (92 Misc 2d 617) and Matter of Chadbourne (92 Misc 2d 648, supra), discuss the question of acceleration under the predecessor statute, EPTL 3-3.10. Neither of these decisions explicitly addresses whether the court has discretion to vary the mandated acceleration. However, in each case, the court appeared to assume that it had no such discretion and followed the statutory rule.
When EPTL 2-1.11 was enacted in 1977, the language regarding acceleration was added to resolve the dispute reflected in a number of conflicting decisions. Those cases looked to testator’s intent as the appropriate guideline and determined acceleration on a case-by-case basis, with unpredictable results. It is clear the addition of this language was intended to provide uniformity (see, e.g., Mem in Support of Amended Bill, Governor’s Bill Jacket, L 1977, ch 861). To engage in the type of analysis suggested by the guardian ad litem would mean a return to the approach rejected by the Legislature.
Based upon the foregoing, it is concluded that Lester’s renunciation is valid as to any and all interests in his father’s estate. Lester is thus to be treated as if he predeceased his father without issue.