LOUIS J. REZZEMINI, as Committee, etc., of JOHN M. W. DURANT, an Incompetent Person, Appellant, Respondent, *v.* ROELIF H. BROOKS, as Executor and Trustee under the Will of ELIZA W. DURANT, Deceased, and Others, Respondents, Appellants.

Third Department, January 10, 1923.

Wills — construction — testamentary trust provided that if income was insufficient to support beneficiary then trustee was authorized to expend principal — income from trust and other sources was sufficient to support beneficiary — extraneous circumstances that may be considered in determining intention of testatrix — principal of trust cannot be used.

In determining the intention of a testatrix as to when and under what conditions the principal of a trust fund established for the benefit of her incompetent son should be used for his support, under a provision in her will that if the income from the fund should be insufficient for the proper support of the son then the trustee could expend so much of the principal thereof as might be necessary for that purpose, the court may consider what facts she knew at the time of the execution of the will as to her own property and as to her son's condition, her known attitude toward her actual beneficiaries and her natural beneficiaries, and may learn every fact essential to know in order, if possible, to understand the general situation surrounding her at the time and to appreciate her general attitude toward the scheme disclosed in her will, but it is limited to facts and circumstances and cannot consider her words of intention directly interpretative of the ambiguity under consideration.

Accordingly, the trustee of the testamentary trust will not be directed to expend any of the principal thereof in support of the beneficiary, where it appears that the income from the trust and the income from other sources is more than

sufficient to support the beneficiary; that at the time of the execution of the will the testatrix knew that her son would have income from other sources, and that she did not give her property directly to her son to be administered by his committee, nor did she appoint the committee to act as trustee of the trust fund.

APPEAL by the defendants, Roelif H. Brooks, as executor and trustee, etc., and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 13th day of June, 1922, upon the decision of the court rendered after a trial at the Albany Special Term, a jury having been waived.

Appeal by the plaintiff, Louis J. Rezzemini, as committee, etc., from so much of said judgment as limits his recovery to the sum of $3,182.63.

*Louis J. Rezzemini,* for the plaintiff.

*Visscher, Whalen, Loucks & Murphy [Robert E. Whalen* of counsel], for the defendant Roelif H. Brooks, as executor and trustee, etc.

*Russell M. Johnston,* guardian *ad litem,* for the defendants John Brooks and Emily F. Brooks.

HINMAN, J.:

This action was brought to obtain a construction of the will of Eliza W. Durant, deceased, who died August 19, 1918, and who by her will executed May 9, 1918, devised and bequeathed her entire estate to her executor, the defendant, Roelif H. Brooks, as trustee, for the benefit of her son, John M. W. Durant, an adjudged incompetent, throughout his life, with remainder over upon his death to the infant defendants, John Brooks and Emily F. Brooks, children of the trustee. By the 4th paragraph of the will, the construction of which is involved in this action, the testatrix provided as follows: " If the income from my estate shall be insufficient for the proper support of my said son, then and in that event, I authorize and empower my said Trustee to expend so much of the principal thereof as may be necessary for that purpose."

The determination of this action turns upon the construction of the word " necessary " as used in the above quoted paragraph. The incompetent, the life beneficiary of the trust, had other means of support to be considered in more detail hereinafter. The contention of the plaintiff, the committee of the incompetent, is that the above clause of the will clearly indicates that it was the intention of the testatrix that her incompetent son should be supported and maintained solely out of her estate, and the court below has sus-

tained that view. A judgment has been entered directing the defendant, trustee, to pay over to the plaintiff as such committee out of the principal of the fund in the defendant, trustee's, hands an amount equal to the difference between the cost of the incompetent's support since the death of his mother, and the income paid over by the defendant, trustee, to the plaintiff as such committee during the same period. It is the contention of the defendant, trustee, and of the guardian *ad litem* for the infant remaindermen that the clause in question should be interpreted as meaning that the incompetent's entire income from all sources shall be supplemented if necessary by the use of the principal of the trust estate in question for the proper support of such incompetent. Considering the naked provisions of the clause in question either construction is fairly inferable and in construing the language used, namely, the power of such a trustee to expend so much of the principal as may be necessary for the proper support of a beneficiary, authority can be found for each construction. The plaintiff's construction is supported by the holding in the case of *Holden* v. *Strong* (116 N. Y. 471) and the contention of the defendants is sustained by what was said in *Moulton* v. *de ma Carty* (6 Robt. 533, 534), quoted with approval in *Wetmore* v. *Wetmore* (149 N. Y. 520, 531) as follows: " In determining what sum is necessary for the support of the defendant [*cestui que trust* herein], it is proper to consider his station in life, and the manner in which he has been reared and educated, his habits, and the means he may have to aid in his support." This is another demonstration of the saying that " no will has a brother." (*Collister* v. *Fassitt*, 163 N. Y. 281, 286.) In that case at the same page the court said: " It may also be said that the citation of numerous authorities, in most instances, are of little assistance to the court, as each will must be construed in the light of peculiar surrounding circumstances, the scheme disclosed, the language employed and the intention of the testator gathered from the general situation." To the same effect see, also, *Matter of Chase* (201 App. Div. 798, 800) and *Hodgman* v. *Cobb* (202 id. 259, 264).

The sole question is as to the intent of the testatrix, which must prevail. To ascertain the intention of the testatrix extraneous and parol proof is admissible, not " to supply, contradict, enlarge or vary the written words" (*Brown* v. *Quintard*, 177 N. Y. 75, 83), but to reveal " the situation of the testator's property at the time of his death, the condition of the beneficiaries and the circumstances surrounding the execution of the will " (*Furniss* v. *Cruikshank*, 230 N. Y. 495, 501); " to consider the surrounding circumstances that culminated in the testamentary act " (*Collister*

v. *Fassitt, supra,* 284). While we may not consider any declaration of the testatrix *dehors* the language of the will, as to what she intended by the use of the language in question, we may consider the relevant and competent surrounding facts and circumstances. We may consider what facts she knew at the time as to her own property and as to her son's condition, physical and financial, present and prospective. We may consider her known attitude toward her actual beneficiaries and her natural beneficiaries. We may learn every fact essential to know in order if possible to understand the general situation surrounding her at the time and to appreciate her general attitude toward the scheme disclosed in the will, but we are limited to facts and circumstances. We cannot consider her words of intention directly interpretative of the very ambiguity which is under consideration.

For over two years prior to the execution of the will of the testatrix her incompetent son John had been a helpless bedridden paralytic and about one year prior thereto upon the petition of the testatrix, John had been adjudged mentally incompetent and the plaintiff had been appointed a committee of his person and estate. Under the will of his father, Allen B. Durant, which was admitted to probate in 1883, John, prior to his mother's death, had received the income from one-half of his father's estate under a trust for that purpose which had been administered by Charles I. Oliver acting under an appointment made in 1908 by the Supreme Court. When his mother died in 1918, John (1) was entitled under his father's will to continue to receive throughout his life the income upon one-half of his father's estate, which continued to be held in trust administered by Mr. Oliver; and (2) his brother George having died many years before, John became the absolute owner of the remaining one-half of his father's estate, his mother having enjoyed the income therefrom during her life; and (3) John also became the sole beneficiary for life of the trust created by his mother's will which is in question here. For convenience the trust under the will of John's father, Allen B. Durant, administered by Mr. Oliver will be designated as fund A; the half interest in the father's estate which by reason of the death of the brother George, has passed absolutely to John and is held by the plaintiff as John's committee, will be designated as fund B; and the trust held by Mr. Brooks under Mrs. Durant's will for John's benefit, will be designated as fund C. Since his mother's death John has had these three sources of income available for his support. The amount of principal of each of these funds is as follows: Fund A is $14,893.19; fund B is $13,749.86; fund C is $22,796.67. The income from fund A for several years last past has been quite

variable as shown by the following figures: In 1917, $1,197.81; in 1918, $1,800; in 1919, $1,500; in 1920, $1,600; in 1921, $900; in 1922 to date of trial in March, $275. The following are the receipts of income from fund B: In 1920, $161.14; in 1921, $626.88; in 1922 to date of trial, $380.77. The following are the receipts from fund C: In 1919, $500; in 1920, $1,190.06; in 1921, $1,100; in 1922 to date of trial, $586.44. For the period covered by these figures the cost of John's necessary support has been as follows: In 1917, $905.56; in 1918, $1,067.74; in 1919, $1,909.43; in 1920, $2,054.29; in 1921, $2,143.11; in 1922 to date of trial, $452.30. There have been some minor expenses of administration which are not important here. It will be seen that the annual expenses for the necessary support of John, who has no family of his own, for each of the years in question has in no instance been as much as his income from all sources. A little more than $2,000 per year will meet the committee's requirements for the proper care and maintenance of John who, ever since his mother's death, has been confined in the ward for insane persons at the Albany Hospital, where he receives all of the care and comfort which he will ever need, since he is incurable, and his wants are only those of the body in view of his mental condition. The income received from funds A, B and C during the years 1918 to 1922 to date of trial, inclusive ($9,866.62), has exceeded the cost of John's support ($6,559.13) by $3,307.49, of which the committee has in his hands unexpended $1,413.20. Yet for the difference between the cost of John's support ($6,559.13) and the income from fund C ($3,376.50), amounting to $3,182.63, the committee has obtained a judgment, compliance with which requires the payment of that sum out of the principal of fund C. If this judgment is carried out, the principal fund C must become less and less each year, the shrinkage therein being accelerated by the gradual diminution of income which must necessarily follow these inroads upon the principal. It is equally clear that if the whole support of John is to be maintained out of fund C, the income from each of the funds A and B will accumulate and remain unexpended. If John lives long enough, the principal of fund C will be entirely exhausted, but the accretions represented by the income from funds A and B will be a part of John's estate unless he lives long enough to require the use of some of them after fund C is exhausted, which is doubtful in view of his age and his present condition. If the construction sought to be placed upon the language of the will by the defendants is to prevail, the combined income of funds A, B and C will be available for use for the proper support of John and if at any time such combined income

shall not be adequate to meet such cost of his support, the trustee of fund C will be required to use so much of the principal thereof as may be necessary for that purpose. The ultimate result so far as John is concerned would be the same in either case, assuming that the three funds are respectively husbanded with equal success. It is, therefore, apparent that in reality we may with fairness conclude that our determination means little or nothing so far as the welfare of the incompetent is concerned and that in the end the corpus of fund C will pass to the beneficiaries or next of kin of the incompetent, theoretically at least, or will pass to the remaindermen named in the will of Eliza W. Durant, deceased, depending upon whether there is a final adoption by the court of the construction of her will made by the court below or of the construction sought to be placed upon it by the defendants.

The testimony shows that the testatrix was thoroughly familiar with what constituted her own property and the value of it at the time of the execution of her will; that she knew that her son had been receiving an income from his father's estate and knew that he would participate further under his father's will when she died and the extent of that participation. It appears that she did not possess accurate knowledge as to the exact extent of that income. She had been living with her son alone except for his nurse and she had no other blood relatives. If she had any relatives by marriage, she had had no intimacy with them and apparently cared nothing for them. She had advised with her son's physician regarding her business affairs and he had suggested that she see the minister of her church, the defendant Brooks, in relation to the drawing of her will. Apparently she did so and a firm of attorneys selected by her was called upon to draw her will. In several interviews she made known her knowledge as to her own property and as to the other source of her son's income. She insisted that she had no relatives to whom she wished to give the corpus of her estate and that there were no charities in which she was interested sufficiently to give it to them. She had no interest in the committee of her son, and while not on unfriendly terms apparently with him, she had no desire to give her property directly to John to be administered by his committee, nor did she desire to have the committee act as a trustee under her will. She insisted upon the selection of the defendant, Roelif H. Brooks, as her trustee against his will; and also, against his protest and without his ultimate knowledge, the children of defendant Brooks were made the remaindermen to receive the corpus of her estate " or so much thereof " as might remain upon the death of her son. Considering all of these facts and circumstances we cannot believe

that it was her intention that none of her son's other sources of income should be used toward his proper support and that such income should be permitted to accumulate in the hands of her son's committee in whom she lacked the confidence sufficient to appoint him as her trustee or to have the handling of her property for her son's benefit by a direct bequest to her son. We cannot believe that it was her intention that the entire support of her son should come out of her own estate to the extent of using the principal of her estate for any deficiency required to meet that cost over and above the income therefrom. We cannot believe that she intended any such result as would be the case if the judgment below were to be affirmed, namely, that the beneficiaries selected by her should be deprived of any portion of the corpus of the estate for the benefit of the next of kin of her son John whom she refused to recognize in her will. Her main interest was to provide in her will that her son John should have every care and attention that her estate could afford to him and if necessary for that purpose to the extent of using any or all of the principal thereof. This will be accomplished under either construction of the will, and we think that when she authorized and empowered her said trustee " to expend so much of the principal thereof as may be *necessary* for that purpose," namely, the proper support of her said son, she intended to take into consideration the other means of income which she knew her son possessed and would possess as available to aid in his support.

The judgment should be reversed upon the law and the facts, with costs in both courts to all parties filing separate briefs payable out of the estate besides such allowances as the Special Term may grant, and judgment should be directed in conformity with this opinion. The court disapproves of finding 11 of the findings of fact and disapproves of the refusal to find as requested in paragraph 16 of the requests submitted by the infant defendants.

H. T. Kellogg, Acting P. J., Kiley, Van Kirk and Hasbrouck, JJ., concur.

Judgment reversed upon the law and the facts, with costs to all parties filing separate briefs payable out of the estate, and judgment directed in accordance with the opinion. The court disapproves of finding 11 of the findings of fact, and disapproves of the refusal to find as requested in paragraph 16 of the requests submitted by the infant defendants. Further findings of fact in conformity with this opinion may be settled on notice.