## In the Matter of the Estate of May Pincus, Deceased.

Surrogate's Court, New York County, October 4, 1951.

*Chester E. Frankel* and *Samuel J. Siegel* for Harold G. Pincus and another, individually and as executors of May Pincus, deceased, petitioners.

*Charles L. Marcus,* special guardian for Peter Jacobs and others, infants, respondents.

FRANKENTHALER, S. During deceased's lifetime the petitioning executors in their individual capacities acquired by assignment the outstanding remainder interests in a trust of which she was the life beneficiary. The petitioners and deceased, their mother, were formally appointed successor trustees, and the trust, by agreement among themselves, was modified by an instrument dated March 30, 1940, so as to permit the making of investments which the will did not authorize. Thereafter, the trustees made loans to the decedent from the trust principal by checks signed by each of the three trust fiduciaries. These loans, which, as adjusted, amount to $42,488.36, are the basis of the claim asserted against decedent's estate, the petitioners contending that they, as remaindermen of the trust, are entitled to repayment of the loans made their mother. They also assert title to 100 shares of the stock of the Book Metals Corporation standing in deceased's name.

The special guardian for the infant beneficiaries under the will of deceased objects to the allowance of these claims. While he concedes that testatrix received loans in the aggregate amount of $21,314.84, against which there is an agreed credit of $4,889.75, he contends that the estate is entitled to additional credits on certain transactions considered below which, if allowed, would result in a net balance owed by the trust amounting to $3,115.16. The basic premise of his argument is that the agreement of March 30, 1940, and the family relationship among the parties indicate that the purpose of the transactions was to secure an adequate income to the decedent and that consequently, the payments made to her from the trust constituted income to which she was entitled as life beneficiary. Unfortunately, the incomplete nature of the records of the trust has tended to obscure the issues and make a complete appraisal of the transactions impossible.

Testimony was offered by the petitioners to show that the deceased specifically ratified and acknowledged her indebtedness to the trust during her lifetime. The uncontroverted testimony established that on January 5, 1946, a conference was held in which Mrs. Pincus, her former husband, the claimants, the attorney for the petitioners and the trust accountant participated. There was discussed at that time the question of deceased's indebtedness to the trust, and a statement was exhibited to her reflecting the amount of her borrowing, itemized as to date, description and amount. The deceased, according to the witnesses, then acknowledged $43,928.66 to be the correct amount of loans made to her by the trust, and she requested a

further loan of $688.75 to pay past due installments of her income tax. The deceased delivered as collateral for her indebtedness certain securities and an assignment of her interest in a brokerage account with Newburger, Loeb & Company. In return, two of her notes evidencing part of the loans previously made were marked cancelled and paid and were surrendered to her.

Upon this proof and the fact that all of the checks representing loans to the deceased were signed by her as trustee, the court finds that testatrix expressly acknowledged her indebtedness. Her failure then and at any subsequent time to assert the rights now urged on behalf of her estate by the special guardian constitutes an effective relinquishment of those rights and bars their enforcement in this proceeding. Furthermore, she is liable for these advances even though there was no express agreement to repay. (Scott on Trusts, § 255, p. 1445. *Accord*; Restatement, Trusts, § 255, comment a; *Moss* v. *Cohen,* 158 N. Y. 240.)

The specific objections of the special guardian are dealt with separately below.

### (a)

### *Alnorm Realty Corp.*

In 1941 the trust purchased from A. H. Pincus for the sum of $5,067.04 a non-interest-bearing note of Alnorm Realty Corp. in the sum of $4,067.04 and in addition one half of its outstanding capital stock. The proof demonstrated a loan to Mrs. Pincus in the sum of $1,425 representing the total amount of installment payments made by Alnorm to the trust in partial liquidation of its indebtedness.

It is the contention of the special guardian that this payment represented income, not principal, and, in addition, that the estate is entitled to a credit of $3,255.18 representing one half the corporation's earned surplus on December 31, 1946, and a further credit of $300 paid by the corporation on account of its notes held by the trust. While he concedes that no dividends were declared by Alnorm, he argues that as the intent of the parties was to secure income for decedent, all payments made to her and one half of the accumulated surplus must be deemed income. The court cannot concur in this view.

As the investment has failed to produce income in the form of dividends, there is no basis for crediting the income beneficiary with the amounts received from Alnorm. The sums so received in liquidation of its indebtedness to the trust constitute principal. Moreover, as no dividends were declared there is no warrant for holding decedent entitled to ownership of any

part of the corporation's earned surplus. The record is barren of any proof that the trustees had anything to do with the management of the corporation nor is there any evidence that would support a claim that the trustees were negligent in failing to institute an action to compel the declaration of a dividend. Consequently, the objection in respect of this transaction is dismissed.

### (b)

### Duquesne Smelting Corporation

In 1941 the trust purchased 500 shares of the preferred stock of Duquesne Smelting Corp. at $50 per share and 1,500 shares of common at $1 at a cost of $26,783.47. Later in the same year the stockholders of Duquesne entered into an agreement with American Metal Co. Ltd. for the sale of the Duquesne stock at a price of $50 per share for the preferred and $3.50 per share for the common plus an amount equal to the profits earned by American in its operation of Duquesne for the ensuing three years. An initial payment of $30,250 was received by the trustees for this stock on December 23, 1941; and an additional amount of $8,025 was paid over the course of the next three years. All of these payments were credited to principal.

The petitioners proved that there was loaned to Mrs. Pincus from the proceeds of the sale the sum of $2,175 for which they claim her estate is obligated. The special guardian again argues that all moneys received in connection with the sale in excess of the cost of the stock was income to the decedent.

The position of the special guardian is not tenable. It does not appear that Mrs. Pincus voiced any objection during her lifetime to the apportionment of the total receipts of the sale to the principal of the trust. On the contrary, at the conference on January 5, 1946, when she acknowledged owing a total of $43,928.66 to the trust, there were included, as a part of her indebtedness, loans from principal aggregating $2,175 from the proceeds of the Duquesne sale. Her acquiescence in their treatment as principal bars a further claim by her (Scott on Trusts, § 216) despite the conceded fact that in 1941 the trustees reported the sums received in excess of original cost as income rather than as a capital gain.

Even if the court were to disregard the bar created by decedent's acquiescence, the fact that the deferred portion of the proceeds was an integral part of the purchase price, compels the conclusion that apportionment between income and principal was neither necessary nor proper and the objection of the special guardian is accordingly dismissed.

## (c)

### Stock Sale Profits

The trust claims as a credit the sum of $2,427.27 in loans to deceased equal to one third of the net profits on the sale of stocks held in the name of deceased or in street names. The special guardian concedes that the money to purchase the stock on which the profit was realized was advanced to the deceased from the trust. He asserts, however, that there was no testimony to support the claim that the purchase money was so advanced for the purpose of making investments for the trust and objects not only to the credit claimed but also to the failure of the trustees to credit Mrs. Pincus with the additional sum of $4,854.54 representing the remaining two thirds of the total profit realized.

While there has been no satisfactory proof indicating the trustees' reasons for paying to decedent a sum equal to one third of the profits on the sale of some of the stocks, the court finds that the stocks in question were in fact the property of the trust and that the payments made to decedent constituted loans from the principal. In connection with the modification of the trust in 1940, a closing statement as at March 30, 1940, was prepared which indicated that certain of the stocks, upon which part of the sales profits here in controversy was realized, were being held in the names of two family corporations for the benefit of the trust. The decedent was a party to this transaction, and as both original and successor trustee was aware of the trust's ownership of the stock. Moreover, the account rendered decedent at the conference on January 5, 1946, listed the payments made to her from the stock profits as loans from principal. Upon this evidence, the court finds that the advances to decedent were loans for which her estate is liable.

## (d)

### Book Metals Corp. Stock

Of the total of loans which the claimants assert were made to Mrs. Pincus, $20,000 was used by her for the purchase of 100 shares of the stock of Book Metals Corp. from her son-in-law, Mitchell Jacobs. On December 23, 1944, Mrs. Pincus entered into a contract with Mr. Jacobs in which it was agreed that she would pay him the sum of $25,000 which he was to use for the purpose of enabling him to exercise his right to purchase one hundred shares of stock which he agreed to deliver, indorsed in blank, to the testatrix immediately upon issuance. The agreement further provided that Mrs. Pincus would not hypothecate

the stock, except upon Mr. Jacob's consent, to anyone other than the trust. It was agreed that dividends received during Mrs. Pincus' lifetime would be divided between her and Mrs. Jacobs and that upon the former's death fifty shares would " become the property " of Mrs. Jacobs and fifty shares the property of Harold G. Pincus, claimant and son of the deceased, " either by the terms of a will made * * * by the second party (Mrs. Pincus) or * * * as sole remaindermen under the * * * trust."

Mrs. Pincus obtained the money to finance the transaction from the trust to which she gave her personal check for $5,000 taking back a check for $25,000. Mr. Jacobs and Mr. Frankel, attorney for the trust, both testified that the stock was never pledged by the testatrix during her lifetime but was delivered by her to Mr. Frankel for safekeeping. Her will contains no provision carrying into effect her agreement to bequeath the stock to Mrs. Jacobs and Mr. Pincus.

On these facts, the claimants assert that the estate is indebted to the trust in the sum of $20,000, the amount of the loan, and that they as third-party beneficiaries of the contract are also entitled to the stock. The special guardian, although conceding that the loan was made and not repaid, argues that the transaction was plainly a subterfuge, that the testimony that the deceased did not pledge the stock with the trust as collateral is not worthy of belief, and that the stock itself should first be applied to payment of the loan with the surplus delivered to the claimants in accordance with the agreement. He points out that if petitioners' claims were allowed in full, the decedent will have paid $5,000 and her estate will be liable for $20,000 in addition to being divested of title to the stock, valued at $42,600, in exchange for which decedent received no dividends during her lifetime.

Although this transaction appears most unusual, in that decedent received little of value for the obligations she incurred to her children, it is understandable in light of the family relationship existing among the parties thereto. There is no proof that overreaching or fraud existed, and the testimony that the stock was not pledged stands uncontroverted. The assignment of the stock by Mr. Jacobs was a valid consideration for the agreement of the testatrix that on her death it should become the property of Mrs. Jacobs and Mr. Pincus, and she thereby created rights which can be enforced in their favor in this proceeding (*Matter of Tanenbaum*, 258 App. Div. 285; *Schley* v. *Donlin*, 131 Misc. 208).

The extent to which contracts for the benefit of third persons may be enforced by the donees has been the subject of much dispute. For such an agreement to be enforcible there must exist between the promisee (in this case Mr. Jacobs) and the beneficiaries (the claimants) some degree of privity in the form of a moral or legal obligation. Clearly, the relationship of husband and wife between Mr. and Mrs. Jacobs is a sufficient basis for upholding her rights under the contract to ownership of fifty shares of the stock. In the case of Mr. Pincus, however, there was no proof that the promisee was under any legal obligation to him and the court is aware of no fixed moral obligation existing between brothers-in-law. Nevertheless, mindful of the injunction of the Court of Appeals that " ' The doctrine of *Lawrence* v. *Fox* is progressive, not retrogade ' " (*Seaver* v. *Ransom*, 224 N. Y. 233, 240), the court is of the view that the promisee, by coupling his obligation to his wife with the benefit to her brother, created joint rights which are enforcible against the estate in favor of each of the beneficiaries. For the reasons stated the objection of the special guardian is dismissed, Mrs. Jacobs and Mr. Pincus are each held entitled to ownership of fifty shares of the stock and their claim as remaindermen of the trust for repayment of the loan of $20,000 is sustained.

### (e)

*Sale of deceased's interest in syndicate owning premises at 20 West 36th Street, New York City*

Decedent, on May 2, 1942, purchased from her former husband, for $6,046.60, a one-fifth interest in a syndicate which owned the premises at 20-26 West 36th Street in Manhattan. It was testified that in August, 1946, the deceased advised her husband that she wished him to repurchase her interest but on his advice a sale to the trust was arranged instead so that she would continue to enjoy the income from the property. Accordingly, on August 15, 1946, the testatrix assigned her interest to the trust for the same consideration which she herself had originally paid.

The special guardian attacks the transaction on the ground that the price which Mrs. Pincus received was wholly inadequate; that the one-fifth interest in the equity was worth approximately $28,000, the total equity being valued at $139,000. The proof of the property's value based upon the testimony of an expert produced by the special guardian was not disputed by the claimants although they sought to minimize it by reference to factors not considered by the appraiser. However, the special

guardian has only succeeded in demonstrating that deceased's interest in the property may have been worth somewhat more than the price she received for it. It is well settled in this State that mere inadequacy of consideration without proof of fraud is an insufficient basis for rescission of a sale; hence, as no evidence of fraud was offered, the objection is dismissed (*Hamer* v. *Sidway,* 124 N. Y. 538; *Walton Water Co.* v. *Village of Walton,* 238 N. Y. 46; *Parmelee* v. *Cameron,* 41 N. Y. 392; Restatement, Contracts, §§ 76, 81).

Submit, on notice, decree dismissing objections, adjudging the petitioners to be the owners of the stock in Book Metals Corporation and allowing their claim in the adjusted amount of $42,-488.36.