OPINION OF THE COURT
Michael H. Feinberg, S.
*894 In this proceeding to determine the validity of a claim, the petitioners, Stephanie Goodman and Maxine Sadoff, are the executors of the estate of Michael Sharff, the decedent’s son, and the trustees of the residuary trust established in his will for the decedent, Anna Druck, his mother. Respondent is Sydney Kandel, the executor of the estate of Anna Druck. The claim arose from the payments made by the petitioners for Anna Druck’s care. Kandel moves for summary judgment dismissing the claim and the petitioners cross-move to stay the motion for summary judgment until additional discovery is completed and to compel Kandel to respond fully to petitioners’ discovery requests.
The underlying facts are not in dispute. Anna Druck lived with her son, Michael Sharff. Michael Sharff was devoted to his mother. She was unable to handle her own affairs. He supervised her medical care. He managed her financial affairs and made sure that she paid her bills timely.
Michael Sharff died on August 25, 2000. At his death, he was 64 and Anna Druck was almost 96. Michael Sharff had executed a will, dated May 23, 1996. In his will, he left his residuary estate in trust for the benefit of his mother. He named Goodman and Sadoff as executors of his will and trustees of the residuary trust. Under the terms of the trust, the trustees were to pay the net income to Anna Druck, quarter-annually. In addition, the trustees were authorized to invade principal for the benefit of the mother. The relevant language of the will reads as follows: “I authorize my Trustees to pay to my mother, at any time and from time to time, so much of the principal of the trust as my Trustees may in their absolute and unreviewable discretion deem advisable for my mother’s health, support and maintenance.”
Upon the death of Anna Druck, the trust terminates. From the principal then remaining, he left $180,000 to Sadoff; $15,000 each to Sharon Coghlan, Stephanie Goodman, Arthur Leiby, Jeffrey Ostroff, Adam Tyson, Rose Kandel, Rebecca Sharff, Jeremy Sharff, Carrie Gurawitz, and Lyn Gurawitz; $15,000 in equal shares to Sue Greenbaum and Cy Greenbaum; $15,000 in equal shares to Pepi Diamond and Harry Diamond; and the balance of the trust principal to Maxine Sadoff. Michael Sharff s will was admitted to probate on May 2, 2001 and letters testamentary and letters of trusteeship were issued to the trustees.
After Michael Sharff’s death, Anna Druck’s mental and emotional condition deteriorated and she was unable to manage *895 her financial and personal affairs. While she had substantial personal assets, exceeding $1,000,000, she was incapable of paying the bills for her living and health care expenses. The executors of Michael’s estate paid these bills.[1] In so doing, they expended funds in excess of the net income of the trust.
On January 4, 2002, Goodman and Sadoff applied for appointment as Anna Brack’s coguardians pursuant to article 81 of the Mental Hygiene Law. The transcript of the court proceedings shows that the court intended to appoint them as guardians of the person and property of Anna Brack in June 2002. In the meantime, the court appointed Goodman temporary guardian of the property so that she would have access to Anna Brack’s financial records. However, a formal order was not issued (allegedly because a transcript was necessary). Anna Brack became ill in September 2002. The court appointed Goodman as temporary guardian of Anna Brack’s person. Shortly thereafter, on October 8, 2002, Anna Brack died, terminating the guardianship proceeding.
The will of Anna Brack was admitted to probate on February 7, 2003 and letters testamentary issued to Kandel. Under her will, executed the same day as her son’s will, she left $20,000 to a sister and the residuary to be divided between Hadassah and charities selected by her executor.
By the time Anna Brack died, the trustees had expended $241,120.13 from the residuary trust on Anna Brack’s behalf. In addition, the trustees spent $2,075 of their own money for her care, for a total expenditure of $243,195.13. The net income of the trust for this period was only $6,776.26. The trustees served Kandel with a notice of claim for the difference, $236,418.87. The notice of claim alleged that this amount was loaned to Anna Brack and expended for her support and main *896 tenance prior to the appointment of an article 81 guardian. Kandel rejected the claim and demanded payment of the net income of the residuary trust.
The trustees then brought the instant proceeding to determine the validity of their claim. Kandel opposed the claim, claiming that the funds were paid pursuant to petitioners’ duties under the trust. The trustees served Kandel and his attorney, John Levitt, with notices to be deposed. Kandel moved for summary judgment dismissing the claim. The trustees oppose the motion on the ground that they required additional discovery. They seek more complete responses to the interrogatories and requests for documents that they served.[2] They also ask that they be allowed to depose Kandel and Levitt and that the motion for summary judgment be denied or stayed pending such discovery (CPLR 3212 [f]).
CPLR 3212 (f) authorizes the court to deny summary judgment or grant a continuance pending discovery when facts essential to justify opposition to the motion may exist but cannot be stated. However, the party making the motion must show what “essential” facts exist and what steps he or she has taken to discover them. In the instant case, the gravamen of their claim is that they were prohibited by the will’s language from invading principal of the trust for Anna Druck’s benefit because she had ample private resources and that, therefore, they made a “loan” to her.
The trustees argue that they need further discovery on whether Anna Druck’s assets, combined with trust income, were sufficient for her care. Such discovery might be warranted if Kandel took the position that Anna Druck’s personal assets were insufficient for her support and maintenance. However, Kandel does not dispute that Anna Druck’s assets were sufficient to pay for her support and maintenance. Rather, he claims that petitioners had the duty to invade principal notwithstanding Anna Druck’s substantial assets. Under these circumstances, there is no need to establish all of Anna Druck’s assets. The record reflects that Anna Druck’s assets at her death were approximately $1,000,000 and Michael’s assets at his death *897 were approximately $1,600,000. This is sufficient to pass on the validity of petitioners’ claim.
During oral argument, the parties disagreed whether the trustees ever expressed an intention to be repaid for the principal advanced. Kandel alleged that no requests were made until 26 months after the distributions had been made. Over Kandel’s objection, the court allowed limited deposition of Kandel and Levitt on the issue of whether there was any understanding to repay the expenses. Based on the above, the application to deny the motion for summary judgment or to stay the motion pending further discovery is denied (see Schumacher v Sea Craft Indus., 101 AD2d 707 [1984]).
Kandel argues that the claim, based on an alleged loan, must be denied because there is no evidence of a loan. Moreover, he claims that such a loan would be unenforceable under the statute of frauds, that Anna Druck lacked the mental capacity to agree to such a loan. He also notes that the petition filed by Goodman in the guardianship petition stated that Anna Druck had no debts. The only evidence in opposition is the affidavit of Goodman that the trustees believed that they would be reimbursed for the expenditures. “In no way did we ever consider that we were making distributions to Anna Druck from the Sharff Estate, other than the interest income to which Anna Druck was otherwise entitled.” (Goodman affidavit, dated Mar. 16, 2004.)
Summary judgment may be granted only where it is clear that no triable issue of fact exists (see, e.g., Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Phillips v Kantor & Co., 31 NY2d 307 [1972]). The key to summary judgment is issue finding rather than issue determination (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957]), as issues of fact require a hearing for determination (Matter of San Giacomo, 14 NY2d 615 [1964]). Consequently, it is incumbent upon the movant to make a prima facie showing that he or she is entitled to judgment as a matter of law (CPLR 3212 [b]; Zuckerman v City of New York, 49 NY2d 557 [1980]; Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065 [1979]; Zarr v Riccio, 180 AD2d 734 [1992]).
A “loan” is a contract by which one party advances monies to the other upon a promise to repay (see 2 Black’s Law Dictionary 1085 [4th ed 1951]; see also Citadel Mgt., Inc. v Telesis Trust, Inc., 123 F Supp 2d 133 [SD NY 2000]). Like any contract, it requires mutuality of consent (Schultz & Co. v Camden Fire *898 Ins. Assn., 304 NY 143 [1952]; Matter of Tanenbaum Textile Co. v Schlanger, 287 NY 400 [1942]). Petitioners have failed to allege an express agreement by the income beneficiary to repay the monies advanced. While an agreement can be implied, the agreement must be clear, unambiguous and unequivocal (see Russell v Raynes Assoc. Ltd. Partnership, 166 AD2d 6 [1st Dept 1991]). Mere silence or inaction is insufficient (see Matter of Ahern v South Buffalo Ry. Co., 303 NY 545 [1952], affd 344 US 367 [1953]; Matter of Albrecht Chem. Co. [Anderson Trading Corp.], 298 NY 437 [1949]).
In the instant case, the income beneficiary was under no obligation to speak. She was never informed that the distribution was a loan and, from the record, it is not clear that she had the requisite capacity to assent to repayment even if she had been informed. In addition, as Kandel notes, Goodman’s petition to be appointed guardian of Anna Druck stated that Anna Druck had no debts.
The burden of proving a loan is on the petitioners, as executors and trustees under Michael Sharff’s will. Any doubts on the sufficiency of the proof is resolved against them (Vinlis Constr. Co. v Roreck, 30 AD2d 668 [2d Dept 1968], mod on other grounds 27 NY2d 687 [1970]). Accordingly, the trustees’ claim of a loan is dismissed. The trustees argue that even if there was no loan, there is still an equitable duty to repay the funds advanced. The monies were expended for Anna Druck’s care and petitioners acted expecting to be repaid. Therefore, they claim that they are entitled to reimbursement under the theory of quasi contract. They ask that the court “equitably adjust the expenditures made by petitioners for the benefit of Anna Druck, giving due consideration to the assets available to Anna Druck during her lifetime for that purpose.”
Quasi contract is an equitable theory that provides for repayment when one has paid out money which another in good conscience and equity should have paid. It is not based on an express agreement. Rather it is imposed by law (Bradkin v Leverton, 26 NY2d 192 [1970]; Friar v Vanguard Holding Corp., 78 AD2d 83 [2d Dept 1980]).
“A quasi or constructive contract rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. In truth it is not a contract or promise at all. It is an obligation which the law creates, in the absence of any agreement, when and because the acts of the *899 parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which ex aequo et bono belongs to another. Duty, and not a promise or agreement or intention of the person sought to be charged, defines it.” (Miller v Schloss, 218 NY 400, 407 [1916].)
A quasi-contractual obligation is one imposed by law where there has been no agreement or expression of assent, by word or act, on the part of either party involved. (Bradkin v Leverton, 26 NY2d 192 [1970].) In order to establish a cause of action in quasi contract, a party must establish (1) the performance of service in good faith; (2) the acceptance of those services by the person to whom they are rendered; (3) an expectation of compensation therefor; and (4) the reasonable value of the services. (Landcom, Inc. v Galen-Lyons Joint Landfill Commn., 259 AD2d 967 [4th Dept 1999].)
Kandel argues that the claim for reimbursement should be denied because it is merely an attempt to obtain funds from Anna Druck’s estate for the benefit of Sadoff. Since there are sufficient funds to pay the general bequests upon the termination of the trust, any monies recovered will be distributed to Sadoff. Kandel alleges that Goodman and Sadoff never made a claim for repayment while Anna Druck was alive, nor made any application to the court for advice and direction as to whether they were obligated to do so.
This attack on their good faith and their expectation of repayment is vehemently denied by the trustees. At his deposition, Kandel testified that he met with petitioners shortly after Michael’s death. He expressed the opinion that Anna Druck would be best cared for in a nursing home. He denied agreeing to reimburse petitioners for the monies expended on Anna Druck’s care. Levitt was deposed and stated that when he was informed by petitioners of their position, he advised them to file a claim against the estate.
It is true that the trustees could have applied to the court for advice as to whether they were obligated to provide support for Anna Druck despite her personal resources. However, they were not obligated to do so. The trustees should not be faulted for paying the expenses of Anna Druck’s support while she was alive, even though they did not believe that they had any obligation to do so, and leaving the issue of repayment for her estate. *900 Their actions allowed Anna Druck to live her remaining days in the comfortable surroundings of her home.
The trustees attempt to defeat the motion for summary judgment by arguing that there is a question of fact whether they invaded the trust with the intention to seek reimbursement. On the contrary, the gravamen of their claim is that they did not believe they could invade principal for Anna Druck’s support given her resources, and they expected to be repaid. Goodman states in her affidavit that she discussed the situation with Kandel shortly after Michael’s death and that she told Kandel that she and Sadoff would be paying Anna Druck’s bills from assets of Michael’s estate and would seek reimbursement at an appropriate time. She states that Kandel, who at this point was only a potential successor executor/trustee of Michael’s will, declined to get involved in Anna Druck’s care. After Anna Druck’s death, Goodman spoke with Kandel and Levitt about reimbursement and allegedly was informed that they had no objection to the claim. Therefore, there is no question of fact that the trustees intended to be repaid for the payments.
That said, the claim for equitable relief depends upon the correctness of their assumption that they could not pay for the income beneficiary’s support because she had adequate resources. It is not disputed that they spent almost a quarter of a million dollars for her support. They allege that the payments were made with the expectation that they would be repaid from Anna Druck’s assets once a guardian was appointed. If the trustees were not authorized to invade the trust for Anna Druck’s benefit under the circumstances presented, they have stated a valid claim for repayment (see e.g. Matter of Garcy, 38 Misc 2d 994 [Sup Ct, NY County 1963], mod 19 AD2d 811 [1963]; Kates v Marine Midland Bank, N.A., 143 Misc 2d 721 [Sup Ct, Monroe County 1989]; Matter of Pincus, 202 Misc 482 [Sur Ct, NY County 1951]; In re Gruber’s Will, 122 NYS2d 654 [Sur Ct, Monroe County 1953]; Restatement [Third] of Trusts § 50 [2], Comment d [6]). If, on the other hand, they were required to invade the trust for Anna Druck’s benefit, the payments were pursuant to their obligations as trustees and they have no equitable basis to seek repayment.
The invasion of principal for Anna Druck’s support was left to the “absolute and unreviewable discretion” of the trustees. The grant of absolute discretion in the will means that the trustees have greater latitude in exercising their discretion (Restatement [Third] of Trusts § 50, Comment e). The court will not *901 interfere in the exercise of a discretionary power unless the trustee acts out of an improper motive or unreasonably (Community Serv. Socy. of N.Y. v New York Community Trust, 275 AD2d 171 [1st Dept 2000], appeal dismissed 96 NY2d 812 [2001]; Matter of McManus, 62 AD2d 758 [2d Dept 1978], affd 47 NY2d 717 [1979]).
Nonetheless, the court has the responsibility to ensure that the trustees do not abuse their discretion. Accordingly, the court has the authority to correct abuses in the exercise of absolute discretion that are arbitrary or the result of bad faith (see Matter of Gilbert, 156 Misc 2d 379 [Sur Ct, NY County 1992]; Leigh v Estate of Leigh, 55 Misc 2d 294 [Sup Ct, Nassau County 1967]). This includes cases where the trustees improperly fail to exercise their discretion (see Matter of Osborn, 252 App Div 438 [2d Dept 1937]; Matter of Kaminester, 16 Misc 2d 1071 [Sur Ct, Kings County 1959]).
In the absence of an express provision in the will, the court must construe the intent of the testator. The trustees argue that the motion for summary judgment should be denied as premature because there are questions of fact whether Michael intended the trustees to consider Anna’s assets in determining whether to invade principal. The issue presented is one of construing the testator’s intent. While this is obviously a question of fact, the trustees have presented no disputed facts relevant to the determination of the construction of the will. There is no reason why the construction of an invasion clause cannot be the subject of a motion for summary judgment {see, e.g., Rezzemini v Brooks, 236 NY 184 [1923]).
The cases have construed trusts with the discretionary power to invade for support as either a gift of support or a gift of income only, with the discretion to invade principal only if necessary. Where the gift is one of support, the testator does not attach a condition of need, and intends that the gift of principal be as broad as the gift of income (see Matter of Emberger, 31 AD2d 651 [2d Dept 1968], affd 25 NY2d 924 [1969]; Rezzemini v Brooks, 236 NY 184 [1923]; Holden v Strong, 116 NY 471 [1889]).
If, on the other hand, the gift is one of income, with the right to principal only if needed for the beneficiary’s support, there is no absolute gift of principal. The prime gift is that of income. The testator intends that the invasion of the principal be dependent upon the needs or requirements of the beneficiary. In such cases, the trustees must consider the beneficiary’s personal re *902 sources and can invade principal only to the extent that the beneficiary’s own resources are insufficient for his or her support (see Matter of Flyer, 23 NY2d 579, 584 [1969]; Matter of Martin, 269 NY 305, 312 [1936]; Matter of Briggs, 180 App Div 752 [3d Dept 1917], mod on other grounds without op 223 NY 677 [1918]; see also Matter of Hogeboom, 219 App Div 131 [3d Dept 1927]; Matter of Sharp, 137 Misc 644 [Sur Ct, Wayne County 1930]).
In support of their position, the trustees have attached the affidavit of the attorney who drafted Michael Sharffs will. The draftsman states that the provision is a standard provision he uses when the testator intends to bequeath his residuary estate to an elderly parent. The trust provision allows the testator to provide for the needs of the parent, while preserving the corpus of the estate for distribution to the beneficiaries of the testator’s choice after the parent’s death.
The attorney/draftsman claims that the power of invasion was meant solely as a “fail-safe” provision to protect his mother in the event that she comes upon “hard times.” The attorney claims that the requirement that the parent use their own resources has a “distinct estate planning advantage: the mother’s own assets are used for her support which assets would otherwise be subject to taxes on her death, rather than using trust assets which would not be subject to estate taxes upon the mother’s death.” The attorney concludes:
“There was no reason for the Trustees to routinely pay the mother’s expenses without regard to the mother’s resources. I do not believe that Michael Sharff ever intended that his Trustees would voluntarily exercise their discretion to invade the principal of the trust to support his mother if his mother had resources of her own to support herself.”
Kandel argues that the will is clear on its face, so that the affidavit is inadmissable to establish the decedent’s intention (Matter of Cord, 58 NY2d 539 [1983]). However, even if the affidavit is considered, the affidavit is silent on Michael Sharffs intentions. There is no claim to a conversation on point. Since Michael was in charge of his mother’s finances and the wills were drawn the same day, it is logical that he knew that her will left everything to charity and would incur no estate tax. Moreover, he might not have intended the trustees to consider his mother’s assets, since she was in her 80s when his will was executed and he might not have expected his mother to live long *903 enough after his death for her expenses to deplete the trust. In fact, she lived for only another two years. Even after the distributions, there are ample funds to pay the general bequests with enough left to provide a substantial distribution to the remainderman, Sadoff. Under these circumstances, the evidence of the draftsman is not determinative of the testator’s intent.
While the specific language must be considered, the function of the court is to determine the intent of the testator and, if the testator’s intention can be determined, to implement it (Matter of Scott, 8 NY2d 419 [1960]; Matter of Bellows, 103 AD2d 594, 597 [2d Dept 1984]). The testator’s intention is not to be gleaned from a single word or phrase but from a sympathetic reading of the will, as an entirety, and in view of the facts and circumstances under which the provisions were drafted (Matter of Flyer, 23 NY2d 579 [1969]; Matter of Fabbri, 2 NY2d 236 [1957]).
The question of whether a trustee, in disbursing principal, must consider the assets of the beneficiary has generated significant litigation. Analysis of the cases shows that the decisions are based on “a careful analysis of the wording of each, the circumstances surrounding the decedent in each case at the time of the making of the will and the relationship of the decedent to the beneficiaries of the trusts” (In re Cowee’s Will, 120 NYS2d 674, 677 [Sur Ct, Rensselaer County 1953]).
For example, in Holden v Strong (116 NY 471 [1889]), the trust provision gave the trustee the authority to use so much of the trust fund, either interest or principal, as shall, in his judgment, be necessary for the proper care, comfort and maintenance of the income beneficiary. The income beneficiary was the testator’s son. He was unable to work fully. He was not in sound health and his mind was not balanced. He had been insane for a time. He was able to earn some money repairing clocks and sewing machines.
The trial court found that the trustee had a duty to support the son, even though he earned some income. On appeal, the Court of Appeals affirmed, holding that the trustee had the duty to provide for his support and maintenance according to his condition in life even though he was able to support himself by his own exertions.
“We do not understand that in order to receive the benefit of the provisions of the will it is necessary for him to remain idle and refrain from all personal exertion, neither does the fact that he is frugal and saving and has accumulated a fund which he has *904 deposited in the bank deprive him of the right to the support provided for him.” (Id. at 475.)
In Rezzemini v Brooks (236 NY 184 [1923]), the will provided for a trust for the benefit of the testator’s son. The terms of the trust provided that if the trust income was insufficient for the proper support of her son, she authorized her trustees to expend “so much of the principal thereof as may be necessary for that purpose.” (Id. at 191-192.) On her son’s death, the principal, “or so much thereof as may then remain” was to be paid to the remaindermen. (Id. at 191.) The son was a bedridden, incurable paralytic, who had been declared mentally incompetent. His mother paid for his expenses. The son had a right to one half the income of a trust established in his father’s will. When his mother died, he inherited the corpus of the other one half, which had been left in trust for the benefit of his mother. The principal of his father’s trust was approximately $28,000. The principal of his mother’s estate was approximately $22,500.
The trial court found that the trustee had to pay for the son’s support and could not consider resources. The Appellate Division reversed. The Court of Appeals reversed the decision of the Appellate Division. The Court found that the mother knew of the income when she drew her will. She did not provide that remaindermen were to be paid the principal upon the son’s death. Instead, she provided that the principal, “or so much thereof as may then remain” should be paid to the remainder-men. This indicated that the son was to be supported first from the income and second from principal if necessary.
In Matter of Emberger (31 AD2d 651 [2d Dept 1968], affd 25 NY2d 924 [1969]), the testator left $28,000 in trust. The trustees were to pay the net income for the support and maintenance of his wife, and, in the event the net income shall be insufficient, to use as much of the principal as the trustees deem advisable for her support and maintenance. Upon the death of his wife, the balance of the trust fund was left to his sister Emma or, if she predeceased her, his sisters and brother then living.
Six weeks before the testator executed his will, he purchased an annuity for his wife providing $100/month. Although there was no judicial determination of incompetency, his wife required supervision and was listed as an alleged incompetent in the probate proceeding. Emma died shortly before the widow. The widow’s executor objected to Emma’s account on the ground that Emma used the $100 annuity to pay for the widow’s support instead of the trust principal.
*905 The surrogate held that the trustee should have expended principal from the trust for the widow’s support to the extent that the trust fund’s income was insufficient. He surcharged the trustee for not using the trust principal for support. The Appellate Division affirmed without opinion. There was a dissent, which argued that there was no need to deplete the trust fund. The dissent found that it was inconceivable that testator intended the trustee to ignore the provisions for the widow’s support that he made shortly before the will and to benefit the wife’s distributees to the detriment of Emma and his own blood. Nonetheless, the decision was affirmed by the Court of Appeals.
In Matter of Flyer (23 NY2d 579 [1969]), the will created a trust for the testator’s second wife. It provided that the income should be used for his widow’s benefit and that, “if such income be insufficient . . . [to] pay or use from principal sufficient moneys to provide for Elsie’s support and maintenance, in the sole, absolute and uncontrolled discretion of the Trustee.” (Id. at 582.) Upon her death the principal is distributed to his three daughters from his first marriage, in equal shares.
The testator died four years after executing the will. The wife spent most of the remaining years of her lifetime in hospitals and nursing homes and was finally confined to Pilgrim State Hospital after she attempted suicide. She had cash and property in her own name worth $10,000 and income from Social Security payments amounting to about $1,800 per year. She owed about $10,000 in hospital bills. The committee for the wife sued for a construction that the trustee was obligated to pay this bill without considering the widow’s assets. The surrogate held in favor of the committee, and required the trustee to pay all amounts necessary for the widow’s support and maintenance out of both principal and income without consideration of the widow’s private resources. The Appellate Division affirmed. Justice McGivern dissented, finding that invasion of principal would slowly erode the trust, while the widow’s right to Social Security payments would uselessly accumulate.
On appeal, the Court of Appeal reversed. The Court held that the will, read as a whole, showed an intent to provide for his wife during her lifetime. However, his primary concern was for his children. He desired to preserve his estate for them and did not intend to exhaust the trust for his widow’s support, a result which might ensue if principal was to be invaded without regard to his wife’s own income. The testator’s provision for his wife from trust principal, as opposed to income, was secondary.
*906 Among the facts and circumstances considered by the courts in determining the testator’s intent are: the specific language used by the testator, the testator’s relationship with the income beneficiary and the remaindermen, the testator’s knowledge of the income beneficiary’s resources and the relationship between the beneficiaries under the testator’s will and those under the will of the income beneficiary.
The trustees rely on cases such as Matter of Flyer (23 NY2d 579 [1969]) to support their construction that the trustees were required to consider the income beneficiary’s resources in exercising their discretion to invade principal for support. Kandel relies on cases such as Matter of Emberger (31 AD2d 651 [2d Dept 1968], affd 25 NY2d 924 [1969]), Rezzemini v Brooks (236 NY 184 [1923]) and Holden v Strong (116 NY 471 [1889]) in support for their construction that the trustees could not consider the income beneficiary’s income in exercising their discretion.
In the instant case, there are facts that support each side’s construction. The language used, providing for distribution of “the then principal of the trust,” is suggestive of a gift of support (see Rezzemini v Brooks, 236 NY 184, 191 [1923]).[3] In addition, there is no question but that the testator’s primary concern was the care of his mother if he predeceased her. While the trustees argue that Sadoff and the other remaindermen were the primary beneficiaries of the trust, this is belied by the testator’s lifetime support of his mother. Further support that the mother was the primary beneficiary of the trust is the fact that the income beneficiary is the testator’s mother, while the remaindermen are friends (see e.g. Matter of Hogeboom, 219 App Div 131 [3d Dept 1927]).
On the other hand, while Anna Druck was the primary concern of the testator, Sadoff and Goodman were clearly very important to the testator. Goodman and Sadoff met Michael Sharff through a camp that he ran. Sadoff was hired as a bookkeeper for the camp and Goodman and her family attended the camp. They were his two closest friends and he appointed them as trustees, relying on their judgment in the care of his mother if he predeceased her. He provided a small gift of $15,000 to Goodman and a gift of $180,000 and the residuary interest in the remainder to Sadoff. This interest is worth over $500,000, even after the distributions to Anna Druck at issue here.
*907 In addition, he left gifts of $170,000 out of the remainder to friends and relatives. The gift of so sizable a remainder, to so many friends and relatives, is poignant proof that he did not intend the trust to be depleted for his mother’s care (see e.g. Matter of Flyer, 23 NY2d 579 [1969]; Matter of Sharp, 137 Misc 644 [Sur Ct, Wayne County 1930]). There is little reason to assume he wished for these bequests to be endangered for the benefit of charities selected by his mother and her executor (see Matter of Hogeboom, 219 App Div 131 [3d Dept 1927]; In re Jaeck’s Will, 42 NYS2d 514 [Sur Ct, Nassau County 1943]).
Based on the facts, the court finds that the testator did not intend that the trust be depleted despite his mother’s substantial assets. The testator clearly intended that there be a substantial fund left at the trust’s termination. This is inconsistent with the intention to distribute principal to the point of depletion of the trust, no matter what Anna Druck’s resources were.
Nor did he intend that his mother’s assets be depleted before the trustees could provide for her support out of principal. This construction would give the trustees no discretion to invade the trust corpus for his mother’s support until she became impoverished. It is hard to reconcile this construction with the testator’s lifetime devotion to his mother’s needs.
Rather, he intended that the trustees balance the needs of the mother, given her available resources, with the needs of the trust to preserve principal for the beneficiaries. Under this construction, the trustees may consider the beneficiary’s personal resources as one factor in exercising their discretion to invade principal of the trust for support. The trustees must balance the needs of the income beneficiary, considering her resources, with the interests of the remaindermen.
The court recognizes that the prior decisions have required a construction that limits the trustee’s discretion. If the gift is one of support, there is no discretion to consider the income beneficiary’s situation. If the gift is of income, there is no discretion to invade principal for her needs until her resources are depleted to the point her support cannot be met by her own resources. Nonetheless, the court believes that there are sound policy reasons for adopting a less restrictive construction.
We are construing a will. In such an endeavor, particularly where the discretion to invade principal is involved, the courts have recognized citations to prior cases as rarely determinative. “Under ordinary circumstances . . . particular precedents are substantially valueless” (Matter of Gatehouse, 149 Misc 648, 650 *908 [Sur Ct, Kings County 1933]; see also Matter of Martin, 269 NY 305 [1936]). As a result the issue “continues to plague the courts and probably will do so as long as variations in language occur” (Matter of Johnson, 46 Misc 2d 52, 56 [Sur Ct, Broome County 1965]).
While this construction might be considered a departure from previous cases, the modern trend is to recognize that the testator may have had a number of objectives — to provide for the care of the income beneficiary and to preserve sufficient trust corpus for the remaindermen. The court does not believe the testator intended to deplete the funds of either beneficiary, the income beneficiary or the remaindermen, at the expense of the other.
Such recognition finds support in the recent revision of the Restatement of Trusts. In the recent revision, the commentators provide that if the trust provisions do not address whether to consider the beneficiary’s personal resources, the general rule of construction is that the trustee is to consider the resources but to retain some discretion in the matter (Restatement [Third] of Trusts § 50 [2], Comment e).
This is a revision from the Restatement’s previous position that there was a presumption that the trustees could not use principal for the beneficiary’s support if the beneficiary’s resources were sufficient (see Restatement [Second] of Trusts § 128, Comment e).
Such a construction allows the trustees, in exercising their discretion, to take into account if the beneficiary is or may be able to receive public benefits. To the extent consistent with the terms and purposes of the trust, the presumption is that the discretion is to be exercised so as to avoid disqualifying benefits for beneficiaries or to pay for benefits otherwise payable from public assistance (see Matter of Oddo v Blum, 83 AD2d 868 [2d Dept 1981]; Matter of Maul v Fitzgerald, 78 AD2d 706 [3d Dept 1980]; Matter of Surut, 141 Misc 2d 1005 [Sur Ct, NY County 1988]; Restatement [Third] of Trusts § 50, Comment e [4]).[4]
Based on the record, the court construes the will as requiring the trustees to consider Anna Druck’s resources as one of the factors in determining whether to exercise their discretion and pay the expenses of her health, support and maintenance from *909 the trust. Anna Druck’s personal resources could be a consideration, but not a controlling one, if a modest invasion request was presented. The trustees failed to exercise this discretion, in the mistaken belief that they had no authority to invade principal given Anna Druck’s means. Therefore, the court may order payment (In re Gruber’s Will, 122 NYS2d 654 [Sur Ct, Monroe County 1953]).
Under the facts of this case, Anna Druck’s resources were unavailable to her after her son died because no one had authority to act on her behalf and she herself was incapable of managing her affairs. This was the reason they paid her expenses out of trust income, and then principal, until shortly before they expected a guardian to be appointed who could utilize her assets to pay her bills. Then they stopped paying her expenses.
It could be argued that there were no personal assets available to Anna Druck to pay for the expenses of her health and support, mandating invasion of the trust. Even if the trustees could consider the lack of assets a temporary phenomenon, their paying Anna Druck’s expenses out of principal until such time as a guardian was appointed was in furtherance of the testator’s intent. The purpose of the trust was to provide for the needs of the parent, while preserving the corpus of the estate for distribution to the beneficiaries of the testator’s choice after the parent’s death.
The trust was in no danger of being depleted by the expenditures. The trustees ceased paying Anna Druck’s expenses when it appeared that a guardian would be appointed, shortly before Anna Druck’s death. Even after such expenditures, there are substantial funds to distribute to the remaindermen. The expenditure of over $240,000 from trust principal still leaves substantial assets of over $1,000,000 to distribute to the remaindermen. Invasion of the trust corpus under these circumstances would be a proper exercise of their discretion.
When this is combined with the fact that there is no evidence of a loan, and that one of the trustees even denied the existence of such a loan in her petition to be appointed Anna Druck’s guardian, the court is constrained to treat the payments as a distribution of principal, not a loan.
The trustees paid $243,195.13 for Anna Druck’s support. Of this amount $6,776.26 came from trust income, $234,343.87 came from trust principal and $2,075 came from the trustee’s personal funds. The motion for summary judgment is granted to the extent that the claim for the reimbursement of *910 $234,343.87 is denied. This sum is deemed a distribution of principal according to the provisions of the will.
The trustee’s claim for $2,075, however, is granted. This claim is for monies which the trustees spent from their own funds. This is a valid claim against the estate of Anna Druck. Handel’s application for an order determining that the estate of Anna Druck is entitled to the trust income of $6,776.26 is denied. The law is clear that the trustees may pay for Anna Druck’s health, support and care from income and, to the extent income was insufficient, from principal (Rezzemini v Brooks, 118 Misc 791 [Sup Ct, Albany County 1922], revd 204 App Div 157 [1923], revd 236 NY 184 [1923]).

. The trust had not been funded at the time of Anna Druck’s death. Nonetheless, the trust was created when the decedent died. Where the will names the same persons as executors and trustees, they act in two functions (see Matter of Willson, 37 Misc 2d 227 [Sur Ct, St. Lawrence County 1962]; 3A Scott on Trusts § 242.9, at 306-307 [4th ed]). Accordingly, once the testator dies, the trustee is responsible for fulfilling the duties of a trustee under the will (see 3 Warren’s Heaton, Surrogates’ Courts § 46.01 [1] [c]). It is at this point that the income beneficiary has the right to income (EPTL 11-2.1 [c] [1]; see also EPTL ll-A-3.1 [b] [2]). The executors’ actions in administering the trust pursuant to the will are deemed to be actions taken as trustees until the trust is separately funded (see Matter of McAlpine v Potter, 126 NY 285 [1891]). To prevent confusion, the petitioners will be referred to as the “trustees” to differentiate their role as trustees from that of executors of Michael Sharff s estate.

. The trustees had previously served notices to depose the executor and the attorney. They also served interrogatories and a demand for documents. The executor had refused to reply to all of the interrogatories, or to provide documents concerning Anna Druck’s assets on the grounds that the requests were improper and not relevant to the proceeding. The depositions were stayed by the motion for summary judgment (CPLR 3214 [b]).

. However, in Matter of Martin (269 NY 305 [1936]), the Court found a gift of income only despite similar language.

. While Anna Druck never required such assistance, one can assume that the testator was aware of the requirements and the possibility that, if his mother lived long enough, she would become eligible for public assistance.